2002 ND 36

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Lance E. HIRSCHKORN, Defendant and Appellant.**

No. 20010094.

Supreme Court of North Dakota.

Feb. 21, 2002.

Cynthia Mae Feland, Assistant States Attorney, Bismarck, for plaintiff and appellee.

Wayne D. Goter, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Lance E. Hirschkorn appealed from a criminal judgment entered on a jury verdict finding him guilty of class B felony gross sexual imposition for engaging in sexual contact with a female under the age of 15 years. We conclude the trial court abused its discretion in admitting the child's hearsay statements about sexual abuse into evidence because the prosecutor failed to satisfy the foundational requirements for admitting the statements under N.D.R.Ev. 803(24). We further conclude admission of the evidence was obvious error affecting Hirschkorn's substantial rights under N.D.R.Crim.P. 52(b), and we reverse and remand for a new trial.

I

[¶ 2] On October 21, 1999, a mother was with her children in their home when she discovered her five-year old daughter in a bedroom with her pants pulled down and a Ken doll between her legs. When the mother asked her daughter what she was doing, the daughter told her "Uncle Lance told me not to tell." The mother called "Ask–A–Nurse" for assistance, and was told the information would be reported to the Burleigh County Sheriff's Department. Deputy Sheriff Gary Schaffer contacted the mother and arranged a meeting with Deb Osowski, a forensic interviewer at a Bismarck child advocacy center. During Osowski's October 27, 1999 interview with the child, the child indicated "Uncle Lance" had touched her "privates" in his bedroom at her grandmother's ranch near Wing. Lance Hirschkorn lives with his mother near Wing and is the younger brother of the child's father, who is divorced from the mother.

[¶ 3] On October 29, 1999, law enforcement officers obtained a warrant to search Hirschkorn's residence, seized videotapes from his bedroom, and arrested Hirsch-

korn. Hirschkorn was interviewed by Schaffer upon his arrival at the Sheriff's Department, and answered "I guess" or "I suppose" to questions tending to implicate him in having had sexual contact with the child. Hirschkorn was charged with gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(2)(a).

[¶ 4] On September 13, 2000, eight days before trial, the State moved under N.D.R.Ev. 803(24) to allow hearsay statements of the child admitted into evidence. Following a hearing on September 19, 2000, the trial court granted the motion, ruling the mother and Osowski could testify about statements the child had made to them about sexual abuse. The child testified at trial, but did not remember anyone touching her in a "bad place." The mother and Osowski testified about what the child had told them, but the trial court did not allow admission of a videotape of Osowski's interview with the child into evidence. Schaffer also testified, and an audiotape of his interview with Hirschkorn was played for the jury. Hirschkorn, his mother, and the child's father were called to testify by the defense. The jury returned a guilty verdict, and Hirschkorn was sentenced to ten years imprisonment, with seven years suspended.

## II

[¶ 5] On appeal, Hirschkorn argues the trial court erred in granting the State's motion to allow the child's hearsay statements into evidence and in allowing Schaffer and Osowski to testify about the truthfulness of statements made to them.

[¶ 6] At trial, Hirschkorn did not make a hearsay objection to the testimony of the mother and Osowski about what the child told them. In *State v. Wiest*, 2001 ND 150, ¶ 6, 632 N.W.2d 812, we held, even if a defendant objects at the pretrial hearing on a N.D.R.Ev. 803(24)

motion, failure to object at trial to testimony of a child victim's out-of-court statement regarding sexual abuse limits our inquiry to determining whether its admission into evidence constitutes obvious error affecting substantial rights under N.D.R.Crim.P. 52(b). To establish obvious error, the defendant has the burden of showing (1) error, (2) that is plain, and (3) that affects substantial rights. *State v. Miller*, 2001 ND 132, ¶ 25, 631 N.W.2d 587. An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law. *State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658.

[¶ 7] The applicable legal rule in this case is N.D.R.Ev. 803(24):

Child's statement about sexual abuse. An out-of-court statement by a child under the age of 12 years about sexual abuse of that child or witnessed by that child is admissible as evidence (when not otherwise admissible under another hearsay exception) if:

(a) The trial court finds, after hearing upon notice in advance of the trial of the sexual abuse issue, that the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness; and

(b) The child either:

(i) Testifies at the proceedings; or

(ii) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

We apply the abuse of discretion standard of review to a trial court's evidentiary rulings under N.D.R.Ev. 803(24), and we will not reverse unless the trial court acts arbitrarily, capriciously, or unreasonably, or if it misinterprets or misapplies the law. *State v. Messner*, 1998 N.D. 151, ¶ 13, 583 N.W.2d 109.

[¶ 8]  Hirschkorn first argues the State's motion was untimely because it was made only eight days before trial and he received less than 24 hours notice of the hearing on the motion.  Hirschkorn claims he was prejudiced by the untimely notice because he had no time to serve subpoenas on witnesses to testify at the hearing and his defense counsel had inadequate time to prepare.

[¶ 9]  Rule  803(24)(a), N.D.R.Ev., does not specify a deadline for bringing a motion to admit a child's statement about sexual abuse, but merely requires that a hearing be held "upon notice in advance of the trial of the sexual abuse issue."  Most courts have adopted a flexible approach to the similar notice requirement under the residual exception to the hearsay rule.  *See* 5 J. McLaughlin, *Weinstein's Federal Evidence* § 807.04[2] (2nd ed.2001); N.D.R.Ev. 807.  Here, Hirschkorn's major complaint about the timeliness of the notice is unfair surprise.  The proper remedy for unfair surprise is a continuance.  *State v. Gross*, 351 N.W.2d 428, 433 (N.D.1984).  A judgment will not ordinarily be reversed on appeal for surprise when no request is made for a continuance at the time and there is no showing of inability to meet the situation.  *Reimche v. Reimche*, 1997 ND 138, ¶ 9, 566 N.W.2d 790.  Hirschkorn did not request a continuance.  Consequently, we conclude the alleged untimeliness of the State's motion and the hearing is not error.

[¶ 10]  Hirschkorn also argues the State failed to establish a legal foundation for the use of the child's hearsay statements.  Although this Court discussed N.D.R.Ev. 803(24) in *Messner*, 1998 N.D. 151, 583 N.W.2d 109, we have not addressed the procedural requirements for the "hearing" contemplated by the rule, and the rule itself does not expressly set them forth.

The Explanatory Note to N.D.R.Ev. 803 states that paragraph (24) "is modeled in part after the Colorado and Utah statutes on a child victim's out-of-court statement regarding sexual abuse."  The courts of Colorado and Utah have construed their similar rules codified in Colo.Rev.Stat. § 13–25–129 and Utah Code Ann. § 76–5–411 on various occasions, and their decisions on the subject are deserving of our consideration.  *See Wiest*, 2001 ND 150, ¶ 7, 632 N.W.2d 812.

[¶ 11]  Enactment of child-hearsay rules is intended to ensure that child abusers do not go free merely because the prosecutor is unable to obtain witnesses to the abuse other than the child, who is unable to testify about the abuse.  *Stevens v. People*, 796 P.2d 946, 951 (Colo.1990).  *See also* Annot., *Validity, Construction, and Application of Child Hearsay Statutes*, 71 A.L.R. 5th 637 (1999).  While the child-hearsay rule permits the admission of otherwise inadmissible hearsay evidence in order to facilitate prosecution, the rule's requirements are also intended to safeguard the accused's right to confront the witnesses testifying against him. *People v. Juvenile Court*, 937 P.2d 758, 760 (Colo.1997).  The child-hearsay rule is intended to balance the interests of the accused and the interests of the truth-seeking process.  *Wiest*, 2001 ND 150, ¶ 7, 632 N.W.2d 812.  Indicia of reliability and guarantees of trustworthiness are constitutionally required before admission of hearsay statements to preserve the Sixth Amendment's basic interest in requiring "confrontation," even though an accused cannot directly confront the hearsay declarant.  *Idaho v. Wright*, 497 U.S. 805, 814–16, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Messner*, 1998 N.D. 151, ¶ 12, 583 N.W.2d 109; *Stevens*, 796 P.2d at 952.  Because of the importance of the accused's confrontation rights, the safeguards built

into the child-hearsay rule must be strictly observed. *State v. Loughton,* 747 P.2d 426, 432 (Utah 1987).

[¶ 12] Although witness testimony is often given at hearings conducted under the child-hearsay rule, courts have ruled a determination that a witness's testimony contains sufficient indicia of reliability and guarantees of trustworthiness can be made without a hearing at which witnesses testify. *See Juvenile Court,* 937 P.2d at 761; *People v. Guajardo,* 262 Ill.App.3d 747, 201 Ill.Dec. 431, 636 N.E.2d 863, 871 (1994); *State v. Nelson,* 725 P.2d 1353, 1355 (Utah 1986). Consequently, in *People v. Bowers,* 801 P.2d 511, 520 (Colo.1990), the Colorado Supreme Court ruled a trial court's determination on reliability may be supported solely by a prosecutor's offer of proof. *See also People v. Moss,* 260 Ill.App.3d 272, 196 Ill.Dec. 685, 630 N.E.2d 850, 856 (1993). We conclude the hearing in this case was not objectionable because the State proceeded with an oral offer of proof, rather than with witness testimony or sworn affidavits.

[¶ 13] Under N.D.R.Ev. 803(24)(a), the child's hearsay statements are not admissible unless the trial court finds that "the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness." Factors to consider include spontaneity and consistent repetition, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and a lack of a motive to fabricate. *Messner,* 1998 ND 151, ¶ 15, 583 N.W.2d 109. A trial court must make explicit findings as to what evidence it relied upon regarding the factors and explain its reasons for either admitting or excluding the testimony so a defendant can be assured the required appraisal has been made, and so this Court can properly perform its appellate review function. *State v. Matsamas,* 808 P.2d

1048, 1051 (Utah 1991); *Nelson,* 725 P.2d at 1356 n. 3; *see also State v. Reed,* 173 Or.App. 185, 21 P.3d 137, 142 (2001). Although written findings are preferred, duly recorded oral findings satisfy the requirements of the child-hearsay rule. *Bowers,* 801 P.2d at 518; *State v. Seale,* 853 P.2d 862, 871 (Utah 1993).

[¶ 14] During the hearing in this case, the prosecutor informed the court the child was five years old when she was interviewed by Osowski and the videotape of the interview was provided to defense counsel. The prosecutor told the court the *Messner* case was "factually very similar to this case," explained that only Osowski and the child were present during the interview, and related Osowski's qualifications as a forensic interviewer. The following exchange then occurred:

THE COURT: So what statements are you asking to be admitted?

MS. FELAND: The statement the child makes to the interviewer in relation to what happened to her; who touched her, where she was touched, where it happened at, whether or not it was below or above clothing, and details about the incident itself. In addition, I am asking that the statements of the mother be allowed as to how this came to light. The mother basically observed the child engaged in sexual role playing with a Ken doll and asked the child some questions and the child gave some initial responses. The mother did not get any great detail, but it shows consistencies in the type of contact that the child references both to the mother and forensic interviewer.

THE COURT: You are asking for the statements made to the forensic interviewer be admitted?

MS. FELAND: For the statements made to the forensic interviewer and those are admitted on the videotape of

the child. In addition, I am asking that the statements the child made to the mother that led to the report roughly on October 21st be admitted. Those are outlined in the 960 report as well as a written statement that was provided by the mother to law enforcement. Both of those statements were provided to the defense at the time discovery was initially requested in this case.

[¶ 15] Defense counsel objected that there was an inadequate record for the court to make the findings required by the rule and argued the child's statements given to Osowski during the interview contained "four material misstatements of fact." After the subject of the hearing shifted to other pretrial matters, the prosecutor continued:

As I said, this is very similar to the *Messner* case as to the facts. In that case there is a social worker and in this case a forensic interviewer, not like just statements made to some guy as parties to the proceeding. These are made basically to the equivalent of a law enforcement type professional, someone who does this for a living. Clearly shows reliability and I would ask the Court to admit the same.

. . . .

THE COURT: ALL right. . . . As to the motion to allow hearsay regarding the child's statement about sexual abuse, from the information I have here today, it appears that just the statement made to the interviewer—at this point you are asking about the mother's statements also, is that correct?

MS. FELAND: Yes.

THE COURT: About what the child told her?

MS. FELAND: And those would be, those were provided to the defense.

Both in the 960 report it indicates that the mother said this is what the child told her, and there is also a written report that the mother provided to law enforcement and included in discovery and when I saw and observed this. I asked the child where she learned this or seen this. And it would be strictly limited to those statements. Nothing outside of the statements that have already been provided to the defense.

THE COURT: There may be statements provided to the defense, but what's the guarantee of the trustworthiness?

MS. FELAND: Basically again look at the time, content. The time again is in close proximity to when this occurred. The content is consistent with the information that was provided to the forensic interviewer. It's not like getting inconsistent statements here. The child's mother has basically had no other discussions with the child in any manner regarding this with the exception of the initial conversation which led up to this report.

. . . .

THE COURT: Okay. As far as the statements are concerned under Rule 803, based on the information they have here today, it appears that there are sufficient guarantees of trustworthiness regarding time, content and circumstances and the Court would allow those statements. . . .

[¶ 16] Although apparently provided to defense counsel, the videotape of the Osowski interview, the mother's report to law enforcement, and the "960 report" were not admitted in evidence, do not appear in the record, and were not reviewed by the trial court.[1]

---

1. In an in-chambers conference on the morning of the trial, the trial court ruled the jury

[¶ 17] The trial court's admissibility evaluation failed to comply with the requirements of N.D.R.Ev. 803(24) in several respects. The court did not even know the verbatim content of the out-of-court statements so an evaluation of their reliability could be made. *See State v. Reiners*, 803 P.2d 1300, 1306 (Utah App. 1990). The prosecutor's offer of proof does not contain any specific factual circumstances that would be necessary to evaluate whether "the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness." N.D.R.Ev. 803(24)(a). No details were provided to the court concerning spontaneity and consistent repetition, the mental state of the child, the use of terminology of a child of similar age, and a lack of motive to fabricate. *See Messner*, 1998 ND 151, ¶ 15, 583 N.W.2d 109. The prosecutor's analogy to *Messner* and general assurances to the court that "time . . . is in close proximity to when this occurred" and "[t]he content is consistent with the information that was provided to the forensic interviewer," without providing the court with any of the underlying factual circumstances, were insufficient to support the admission of the child's hearsay statements.

[¶ 18] A trial court must make an in-depth evaluation of the proposed testimony. *Nelson*, 725 P.2d at 1355 n. 3. A trial court should not, as did the trial court here, merely quote the terms of the rule and order the testimony admitted, but should make specific findings of the facts relevant to reliability and trustworthiness and explain how these facts support the conclusion of admissibility. *See Matsamas*, 808 P.2d at 1052. Although nondetailed findings might suffice when

there is an adequate factual basis in the offer of proof to support the trial court's determination, *see Bowers*, 801 P.2d at 521–22, that is not the situation in this case. Moreover, in reviewing a trial court's evidentiary ruling under N.D.R.Ev. 803(24), we are limited to reviewing the proponent's offer of proof made at the pretrial hearing and may not consider the entire evidence admitted during the trial to support the earlier ruling. In *Bowers*, 801 P.2d at 518, the Colorado Supreme Court so ruled when interpreting Colo. Rev.Stat. § 13–25–129, upon which N.D.R.Ev. 803(24) is modeled:

> The text of section 13–25–129 also contemplates that the trial court's ruling, which obviously will affect the trial preparation of the party adversely affected by the ruling, will be based solely on those matters presented to the court at the *in-limine* hearing. Indeed, if this were not the legislative intent, the *in-limine* hearing would serve no purpose at all and there would be no reason for mandating it by statute.

[¶ 19] We conclude the trial court abused its discretion in admitting the child's hearsay statements into evidence. Because the prosecutor's motion was so lacking in factual support, we further conclude the error is plain because it is "a clear or obvious deviation from an applicable legal rule . . ." *Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658.

[¶ 20] To affect substantial rights, a plain error must have been prejudicial, or have affected the outcome of the proceeding. *State v. Erickstad*, 2000 ND 202, ¶ 22, 620 N.W.2d 136. Analyzing obvious error requires examination of the entire record and the probable effect of

---

would not be allowed to watch the videotape of the Osowski interview, explaining "I have not seen this video. I don't know what is on

it. I have no idea what is on it, so I wouldn't let it come in."

the alleged error in light of all the evidence. *State v. Glass,* 2000 ND 212, ¶ 11, 620 N.W.2d 146.

[¶ 21] In this case, credibility was a crucial issue. There were neither eyewitnesses nor direct physical evidence in the form of a physical examination conducted on the child. The child testified and could not remember anyone touching her in a "bad place." Hirschkorn testified and denied touching the child's vagina. Although the jury heard the audiotape of Schaffer's interview with Hirschkorn in which Hirschkorn answers "I guess" or "I suppose" to questions tending to implicate him in the crime, Schaffer described Hirschkorn's responses as "subtle admissions." Hirschkorn testified about the circumstances surrounding the interview. Hirschkorn, who was 23 years old at the time of trial, testified he "just [went] along" with what Schaffer was telling him because he assumed the sexual contact must have occurred accidentally while "wrestling ... or horsing around" with the child. Hirschkorn further testified he was "scared" and "wanted to get out of the interview room." The only other evidence directly linking Hirschkorn with committing the crime was the inadmissible hearsay testimony of the mother and Osowski about what the child had told them. On this record, we conclude it is probable the inadmissible hearsay testimony affected the outcome of the proceedings.

[¶ 22] Even if the defendant meets the burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within our discretion, and we will exercise that discretion only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Miller,* 2001 ND 132, ¶ 25, 631 N.W.2d 587. In view of the importance of a defendant's confrontation rights, the total lack of factual support for admission of the hearsay statements under N.D.R.Ev. 803(24), and the probability that admission of the hearsay statements affected the outcome of the trial, we exercise our discretion to correct the error and conclude Hirschkorn is entitled to a new trial.

[¶ 23] Because the child-hearsay issue is dispositive of this appeal, it is unnecessary to address the other issues raised by Hirschkorn. *See State v. Flamm,* 351 N.W.2d 108, 109 (N.D.1984). We need not consider issues not necessary to our decision. *See Farmers State Bank of Leeds v. Thompson,* 372 N.W.2d 862, 865 n. 3 (N.D. 1985).

### III

[¶ 24] The criminal judgment is reversed and the case is remanded for a new trial.

[¶ 25] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.