2005 ND 42

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Terry RAMSEY, Defendant and Appellant.**

**No. 20040035.**

Supreme Court of North Dakota.

Feb. 22, 2005.

Jonathan R. Byers, Assistant Attorney General, Office of Attorney General, Bismarck, N.D. for plaintiff and appellee.

TaLisa Nemec (argued), law graduate, and Kenneth B. Bulie, Grand Forks, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Terry Ramsey appeals a criminal judgment and commitment entered upon a jury verdict finding him guilty of Gross Sexual Imposition, a class A felony, for engaging in sexual contact with a female under the age of 15 years. We affirm.

I

[¶ 2] Terry Ramsey ("Ramsey") and his brother Neil Ramsey ("Neil") were separated in childhood from their half-sister. The brothers were reunited with their sister and her two daughters in the late 1990's and began to spend time together as a family. In mid-June of 2001, one of the daughters, ("Jane," a pseudonym), then age 10, and her sister spent a week with Ramsey and his brother at the Ramsey family farm in North Dakota. On June 16, the girls returned to their home in Wyoming for a few weeks before joining Ramsey and his family at their home in Florida on July 4, 2001.

[¶ 3] While in Florida, Ramsey's wife, Valerie Ramsey ("Valerie"), discovered Ramsey in a locked bathroom with Jane. Ramsey was touching Jane's vaginal area while applying a yeast infection medication that she frequently applied to herself without assistance. Valerie confronted Ramsey, and after a brief argument, Ramsey left the family home. The next day, Jane told Valerie that Ramsey had touched her breasts and vagina on more than one occasion during the week she spent in North Dakota. Jane said that Ramsey explained the touching by claiming he thought Jane was his wife and that he told her if she told anyone she would not be allowed to travel to Florida.

[¶ 4] Valerie then notified Jane's mother, who asked that Valerie report the situation to the local police. Both the North Dakota and Florida incidents were reported to local authorities in Florida, including a deputy sheriff and a sex crimes investigator. After being advised to do so by officials in Florida, Jane's mother reported the situation to the appropriate authorities in North Dakota. A warrant was issued in North Dakota, and Ramsey was arrested.

[¶ 5] Ramsey signed a written plea agreement causing the cancellation of his

initial trial scheduled for March 2003. At the July 14, 2003, sentencing hearing, however, Ramsey refused to plead guilty and the trial was rescheduled for December 2003. Ramsey was tried by a jury in December 2003. In addition to Jane's own testimony, the trial court allowed Jane's mother, Jane's aunt, a Florida deputy sheriff, and a Florida sex crimes investigator to testify as to what Jane had told them about Ramsey's actions. The jury returned a guilty verdict.

## II

[¶ 6] On appeal, Ramsey challenges his conviction, arguing the trial court committed reversible error in its pretrial evidentiary motions and violated his Sixth Amendment right to confront his accuser. Ramsey argues the trial court decision to allow Jane's hearsay statements was in error because the court did not set forth explicit findings regarding the circumstances, time, content, and place as required by N.D.R.Ev. 803(24) and applicable case law. Ramsey contends that allowing the hearsay testimony affected his procedural rights to a fair trial because the words of the victim were "bolstered" by presenting them through her mother, her aunt, and subsequent interviewers of the child. Ramsey further argues that the trial court's admittance of evidence regarding his contact with the victim in Florida is reversible error because the prejudicial effect of his subsequent actions far outweighed the probative value.

[¶ 7] Ramsey also argues that by not allowing evidence of a prior rape committed by her step-brother, the trial court denied him an opportunity to confront Jane. Ramsey contends that the previous sexual abuse suffered by Jane produced feelings of shame and guilt on her part, consequently causing her to "instigate and fabricate" the allegations against him in order to rid herself of the blame for the chaos in the family caused by this situation. Without the opportunity to present this evidence, Ramsey asserts his ability to fully confront his accuser was hindered.

## III

[¶ 8] Ramsey argues the trial court committed reversible error in two of its pretrial evidentiary rulings, thereby admitting testimony affecting his substantial rights under N.D.R.Crim.P. 52(b). We review a trial court's evidentiary ruling under an abuse of discretion standard. A trial court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law. *State v. Messner*, 1998 ND 151, ¶ 13, 583 N.W.2d 109 (citing *State v. Christensen*, 1997 ND 57, ¶ 5, 561 N.W.2d 631). An error affecting a defendant's substantial rights is reversible error. *In the Interest of F.H.*, 283 N.W.2d 202, 206 (N.D.1979).

## A

[¶ 9] The first error, according to Ramsey, occurred when the trial court admitted Jane's out-of-court statements through the testimony of her mother, her aunt, a Florida deputy sheriff, and a Florida sex offender/child abuse investigator under N.D.R.Ev. 803(24). Ramsey contends the purpose of Rule 803(24) is to assist the prosecution when an available witness is unable to testify to the details of abuse during trial. *State v. Hirschkorn*, 2002 ND 36, ¶ 11, 640 N.W.2d 439.

[¶ 10] Rule 803(24), N.D.R.Ev., provides:

An out-of-court statement by a child under the age of 12 years about sexual abuse of that child or witnessed by that child is admissible as evidence (when not

otherwise admissible under another hearsay exception) if:

(a) The trial court finds, after hearing upon notice in advance of the trial of the sexual abuse issue, that the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness; and

(b) The child either:

(i) Testifies at the proceedings; or

(ii) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

N.D.R.Ev. 803(24).

[¶ 11] Ramsey argues that because the trial court failed, under N.D.R.Ev. 803(24), to set forth explicit findings regarding the time, content, and circumstances of the hearsay statements that provided sufficient guarantees of its trustworthiness, the testimony was inadmissible hearsay and allowing the jury to hear it was an abuse of discretion affecting his substantial rights. *Hirschkorn*, 2002 ND 36, ¶ 13, 640 N.W.2d 439. Ramsey contends that the trial court was aware Jane had restated her allegations consistently during previous interrogations and interviews, and thus, the use of the Rule 803(24) hearsay exception in this case is inconsistent with the original purpose of the rule. Consequently, according to Ramsey, allowing this testimony only serves to bolster Jane's testimony rather than supplement it.

[¶ 12] Ramsey, however, never renewed his hearsay objections to this testimony during trial except for the testimony of Valerie Ramsey. We have held that even if a defendant objects at the pretrial hearing on a N.D.R.Ev. 803(24) motion, failure to object at trial to the testimony of a child victim's out-of-court statement regarding sexual abuse limits our inquiry to determining whether its admission into ev-

idence constitutes obvious error affecting substantial rights under N.D.R.Crim.P. 52(b). *Hirschkorn*, 2002 ND 36, ¶ 6, 640 N.W.2d 439 (citing *State v. Wiest*, 2001 ND 150, ¶ 6, 632 N.W.2d 812). In order to establish obvious error, the defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights." *Hirschkorn*, at ¶ 6. "An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law." *Id.* "This Court will not set aside a correct result merely because the district court assigned an incorrect reason, if the result is the same under the correct law and reasoning." *Cannaday v. Cannaday*, 2003 ND 58, ¶ 8, 659 N.W.2d 363.

[¶ 13] We conclude that while the testimony of Jane's mother, her aunt, the Florida deputy sheriff, and the Florida sex offender/child abuse investigator was admitted by the trial court under N.D.R.Ev. 803(24), the Florida contact would have been admissible under N.D.R.Ev. 801(d)(1)(ii). Rule 801(d)(1)(ii), N.D.R.Ev., in pertinent part, states:

A statement is not hearsay if:

(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . .

(ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

N.D.R.Ev. 801(d)(1)(ii).

[¶ 14] In his pretrial motion in opposition to admitting this testimony, Ramsey argued that N.D.R.Ev. 801(d)(1)(ii) was not applicable because it could only be used when the testimony was "offered to rebut an express or implied charge against the declarant of recent fabrication or im-

proper influence or motive" and because he had presented "absolutely" no evidence of such a charge.

[¶ 15] It is true that at the pretrial motion hearing Ramsey had not yet raised the argument or implied that Jane's statements to her mother, her aunt, the Florida deputy sheriff, and the Florida sex offender/child abuse investigator were fabrications. Beginning with his opening statement and throughout the trial, however, Ramsey argued, both directly and impliedly, that Jane's version of events was a fabrication resulting from improper influence and motive. Therefore, once Ramsey argued that improper influence and motive caused Jane to fabricate her allegations, Rule 801(d)(1)(ii) became applicable.

[¶ 16] We conclude the statements Jane made to her aunt, her mother, a Florida deputy sheriff, and a Florida sex offender/child abuse investigator are not hearsay and were properly allowed as substantive evidence under N.D.R.Ev. 801(d)(1)(ii).

B

■ [¶ 17] The second error, according to Ramsey, occurred when the trial court admitted testimony regarding the Florida contact for the purposes of showing his conformity with a certain type of behavior. Ramsey argues evidence of his contact with Jane in Florida in July 2001 constituted a wholly separate and independent act from the contact that occurred in North Dakota in June 2001. Ramsey argues this evidence was used to show conformity with a certain type of behavior and, as such, was unfairly prejudicial to him and should have been inadmissible under N.D.R.Ev. 404(b) and N.D.R.Ev. 403.

[¶ 18] The trial court, in its pretrial evidentiary order, found the alleged Florida contact to be evidence of activity in furtherance of the same criminal activity, noting that both occurrences happened within a three-week span and that Jane was under Ramsey's care on both occasions. Accordingly, the trial court concluded the Florida contact was outside the purview of Rule 404(b) and, therefore, admissible. *See State v. Christensen,* 1997 ND 57, ¶ 8, 561 N.W.2d 631. The trial court relied on *Christensen. Id.* However, in *Christensen,* the State introduced evidence of other acts to show the "grooming" that Christensen undertook with the victim to further his criminal activity. Those acts were all non-criminal and occurred prior to the criminal act. In this case, the acts that occurred later in Florida could not have been "grooming" or preparation for the prior criminal acts in North Dakota. We conclude the contact between Ramsey and Jane that occurred in North Dakota in June 2001 and the similar contact that occurred in July 2001 at the Ramsey home in Florida are two wholly separate and independent acts.

[¶ 19] Admitting the conduct in Florida to show a propensity to commit such acts would constitute error. In *State v. Osier,* 1997 ND 170, 569 N.W.2d 441, our Court concluded it was reversible error to admit eight-year-old other-act evidence from Osier's niece. In *Osier,* the defendant was charged with molesting his daughter. The trial court admitted testimony from Osier's niece that he had molested her eight years prior. Our Court held it was reversible error and remanded for a new trial, noting "[t]hat use of the niece's testimony is nothing more than propensity evidence to show Osier had a criminal sexual character and . . . he acted in conformity therewith." *Id.* at ¶ 5. Our Court warned of the dangers inherent in allowing evidence of other acts to show propensity and of tempting a jury to convict a defendant for actions other than the charged misconduct. *Id.* at ¶ 6.

[¶ 20] However, unlike *Osier,* the separate and independent act in the instant case is admissible under an exception to N.D.R.Ev. 404(b). Rule 404(b), N.D.R.Ev., provides, in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

N.D.R.Ev. Rule 404(b).

■ [¶ 21] It should be noted that in our previous opinions considering the admissibility of "other crimes, wrongs, or acts" under N.D.R.Ev. 404(b) the conduct involved "prior-acts," i.e., acts occurring before the charged crime. We, however, do not read Rule 404(b) to include only "prior-acts." Subsequent acts by the defendant should be considered under the same analysis. *See United States v. Pollard,* 509 F.2d 601 (5th Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975). "The longstanding common law rule on prior-act evidence is that it is inadmissible when it is evidence of 'a wholly separate and independent crime' and is used to show a propensity to commit such acts." *Christensen,* 1997 ND 57, ¶ 8, 561 N.W.2d 631 (citation omitted). "Thus, Rule 404(b) only excludes evidence of other acts and crimes committed by the defendant when they are independent of the charged crime, and do not fit into the rule's exceptions." *Id.*

[¶ 22] The trial court did conduct an alternative analysis under Rule 404(b), finding evidence of the Florida contact admissible under a Rule 404(b) exception:

[I]f the Court were to consider the conduct in Florida to constitute wholly separate and independent acts from the North Dakota charged crime, the evidence would still be admissible applying the three-step analysis, which the North Dakota Supreme Court has indicated the Court should do, the Court would find that the Florida incident may be admissible for purposes of proving motive, opportunity, intent, knowledge or absence of mistake or accident. Based upon the State's offer of proof, the Court is presuming that the acts in Florida would be shown to be substantially reliable if Jane Doe and Valerie Ramsey both testify and would be even more corroborated if the investigators from Florida were to testify to show the context in which the information became known to authorities. Also, since this is a criminal case, prior to allowing the Florida incident to be allowed into court, under Rule 404(b), there must be proof the crime charged in North Dakota has been shown which would establish the defendant's guilt independently of the Florida evidence. Again, based upon the State's offer of proof, the Court presumes that Jane Doe would testify as to her being in North Dakota in June with her uncle, the defendant, and the underlying circumstances of what constitutes the North Dakota charge.

■ [¶ 23] A proper determination of whether to admit evidence under one of the Rule 404(b) exceptions should include the following three-step analysis:

1) the purpose for which evidence is introduced,

2) the evidence of the prior act or acts must be substantially reliable or "clear and convincing," and,

3) in criminal cases, there must be proof of the crime charged which permits the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented; without consideration of the evidence of the prior acts.

*Christensen,* 1997 ND 57, ¶ 7, 561 N.W.2d 631; *see also State v. Micko,* 393 N.W.2d 741, 744 (N.D.1986).

[¶ 24] The trial court applied the Rule 404(b) exception analysis correctly. Evidence of the Florida incident is admissible under the "plan" or "absence of mistake or accident" exceptions of Rule 404(b). This is supported first by the nature of Ramsey's custodial relationship over Jane in the summer of 2001 and Jane's testimony that after the inappropriate touching he explained his actions by claiming to have confused Jane with his wife. Second, the evidence of the contact between Ramsey and Jane in Florida was found by the trial court to be substantially reliable because Jane and Valerie both provided witness testimony, and they were further corroborated by the testimony of the Florida law enforcement officials illustrating the context in which the contact became known to authorities. Furthermore, the record indicates that Ramsey has never denied that the Florida contact occurred, he has only denied that his actions were inappropriate. Finally, Jane testified as to the time, place, and specific circumstances of the contact in North Dakota, permitting a trier of fact to establish Ramsey's guilt or innocence independent of whether evidence of the Florida contact is considered.

[¶ 25] However, this does not complete the trial court's evidentiary analysis. The trial court must also determine whether the evidence is admissible under N.D.R.Ev. 403. *See Christensen,* 1997 ND 57, ¶ 7, 561 N.W.2d 631. Rule 403, N.D.R.Ev., states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence. N.D.R.Ev. 403.

[¶ 26] "The rule does not authorize automatic admission merely because the proponent advances a proper purpose for the evidence; instead, the relevance and probative value of the evidence must be demonstrated." *Osier,* 1997 ND 170, ¶ 4, 569 N.W.2d 441 (quoting *Dahlen v. Landis,* 314 N.W.2d 63, 70 (N.D.1981)). In the instant case, the trial court did conduct a Rule 403 balancing test to weigh the probative value of the evidence against the possible prejudicial effect to Ramsey's position. The trial court's Rule 403 analysis is as follows:

Having reviewed the statements and information presented regarding the Florida incident, the Court can understand why the defendant feels such evidence would be prejudicial to his position if the jury believed that evidence. However, the Florida incident having occurred very recently after the North Dakota incident and at a time when the minor, Jane Doe, was still with the defendant on an extended trip which had started in North Dakota and ended up in Florida at the defendant's home, it appears the probative value would outweigh any possible prejudicial effect to the defendant.

[¶ 27] A trial court should exercise its power to exclude evidence under Rule 403 sparingly, recognizing that "any prejudice due to the probative force of evidence is not unfair prejudice." *State v. Klein,* 1999 ND 76, ¶ 5, 593 N.W.2d 325 (citation omitted). "In determining whether to exclude evidence under Rule 403, courts should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *State v. Randall,* 2002 ND 16, ¶ 15, 639 N.W.2d 439. Rule 403 applies to unfairly prejudicial evidence, not simply evidence

that is prejudicial. *State v. Zimmerman,* 524 N.W.2d 111, 116 (N.D.1994). "Indeed, no verdict could be obtained without prejudicial evidence." *Id.* (citing *United States v. Noland,* 960 F.2d 1384, 1387 (8th Cir. 1992)).

[¶ 28] Evidence of the contact between Ramsey and Jane occurring in Florida in July 2001 is especially probative because Ramsey's defense at trial was one of fabrication by Jane. The North Dakota contact was revealed as a result of what happened in Florida, and the subsequent reports to Jane's mother and law enforcement in Florida resulted in Jane's statements to Florida officials. Under these circumstances, the probative value of the evidence exceeds any unfair prejudice that might arise out of admission of the evidence, and we agree with the trial court's conclusion that this evidence is admissible under N.D.R.Ev. 403. We, therefore, conclude that the trial court's N.D.R.Ev. 404(b) and 403 analysis was correct and its decision to admit evidence of the Florida contact was not an obvious error.

## IV

[¶ 29] We have previously held that any doubts about admissibility of evidence under Rule 403, such as doubts about "the existence of unfair prejudice, confusion of issues, misleading, undue delay, or waste of time, should be resolved in favor of admitting the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonition in the charge." *Zimmerman,* 524 N.W.2d at 115 (citing 1 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence,* ¶ 403[01], at 403–11, 403–12 (1994)).

[¶ 30] In the case at bar, the trial court cautioned the jurors as to the limited purposes for which evidence of the Florida

contact was admissible. The jury instruction read as follows:

### Related Acts or Offenses

For the purpose of showing motive, opportunity, intent, knowledge, and absence of mistake or accident, and the context in which the allegations became known to the authorities with respect to the offence charged, the Court received evidence of acts or offenses committed by the defendant in the state of Florida. Before considering evidence of the acts that occurred in Florida for these purposes, you must first find beyond a reasonable doubt that the defendant committed the acts in North Dakota constituting the offense charged.

The acts that occurred in Florida are not evidence by which you may convict the defendant of a crime in North Dakota.

[¶ 31] In addition to not denying the Florida contact occurred, Ramsey did not object to the cautionary instruction given to the jury. A jury is presumed to follow instructions given by the trial court. *State v. Thill,* 2005 ND 13, ¶ 12, 691 N.W.2d 230. Therefore, under the specific circumstances of this case, the jury instruction would have cured any improper prejudice.

## V

[¶ 32] Ramsey argues that the trial court's decision not to admit evidence of Jane's prior sexual abuse violated his Sixth Amendment right to confront witnesses against him. Therefore, because his constitutional rights are affected, the evidence should be admitted under N.D.R.Ev. 412(b)(3). Ramsey contends that he must be allowed to confront Jane in order to show she had a motive for fabricating the allegations; the motive being her shame and guilt when faced with Ramsey's wife's accusatory response and

her desire to preserve her person and to defend herself against an angry stranger.

[¶ 33] Ramsey's current argument to get this evidence admitted differs from the argument he presented below. At the trial court, Ramsey argued he must be allowed to cross-examine Jane about any prior sexual experiences to show that such experiences might be an alternative source for such knowledge by a person of her age. Notably, Ramsey did not renew his motion at trial or make an offer of proof after his initial motion.

[¶ 34] Our Court will not hear issues raised for the first time on appeal. *Chapman v. Chapman*, 2004 ND 22, ¶ 7, 673 N.W.2d 920. "The purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories." *Gonzalez v. Tounjian*, 2003 ND 121, ¶ 31, 665 N.W.2d 705.

[¶ 35] We affirm the criminal judgment and commitment.

[¶ 36] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.

[¶ 37] The Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., disqualified.