2006 ND 134

**STATE of North Dakota, Plaintiff and Appellee**

v.

**James Alfred BLUE, Defendant and Appellant.**

**No. 20050187.**

Supreme Court of North Dakota.

June 29, 2006.

Kelly A. Dillon, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Ryan D. Sandberg, Pringle & Herigstad Law Firm, Minot, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] James Blue appealed from a criminal judgment requesting review of an order granting the State's motion to use a videotaped discussion between a four-year-old and a forensic interviewer. After viewing the videotape testimony, a jury found him guilty of gross sexual imposition. Because the videotape was a testimonial statement and the child was available to testify, the playing of the videotape without the opportunity to cross-examine the witness violated Blue's constitutional right to confront his accuser in violation of the Sixth Amendment. We therefore reverse and remand.

I

[¶ 2] On December 3, 2003, a mother brought her four-year-old daughter to the Trinity Medical Center in Minot. The mother believed the child had been sexually abused by the mother's boyfriend, Blue,

while they were staying at Blue's uncle's house in Minot during the Thanksgiving weekend. Medical personnel confirmed irritation and indicators of penetration to the child's vagina. The Minot Police Department received a report of a possible child sexual assault. The child was referred to the Children's Advocacy Center at MedCenter One in Bismarck, North Dakota.

[¶ 3] On December 11, 2003, Samatha Gregerson, a forensic interviewer, conducted a videotaped interview with the child alone while police officer Nancy Murphy watched on a television from a different room. The child stated Blue had locked a door and put a scissors inside her. The child told the forensic interviewer that her pants and panties were off and James' pants were on. The child stated her mother was sleeping on a couch in the living room while the incident occurred. After the interview was completed, the videotape recording was given to officer Murphy.

[¶ 4] Blue was later charged with gross sexual imposition. The trial court conducted an evidentiary hearing on January 24, 2005. At the hearing, the child, now five years old, was placed on the stand to determine whether she could testify at trial. The child verbally answered some questions but also nodded her head "yes" and shook her head "no" to other questions. Following a continued evidentiary hearing on January 26, 2005, the court issued an order allowing the use of the videotape at trial. The court concluded the child was an unavailable witness due to her lack of memory.

[¶ 5] The case was tried to a jury over two days in February 2005. The videotaped interview of the child was received into evidence and shown to the jury. The child did not testify in front of the jury. The jury also received photographs of the child and a medical report following the incident. The jury convicted Blue of gross sexual imposition, and he was subsequently sentenced to ten years in prison with two years suspended. This appeal followed.

## II

[¶ 6] The Confrontation Clause of the Sixth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment, declares: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Our standard of review for a claimed violation of a constitutional right, including the right to confront an accuser, is de novo. *State v. Messner,* 1998 ND 151, ¶ 8, 583 N.W.2d 109.

### A

[¶ 7] Before *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), reliability was the central focus in Confrontation Clause cases. A hearsay statement would satisfy the requirements of the Confrontation Clause if it fell within a "firmly rooted" exception to the hearsay rules or if it otherwise bore "particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). But under *Crawford,* the federal constitutional right to confront an accuser has been redefined.

[¶ 8] Under *Crawford,* the admission of out-of-court testimonial statements in criminal cases is precluded, unless the witness is unavailable to testify and the accused has had an opportunity to cross-examine the declarant. *Crawford,* 541 U.S. at 59, 124 S.Ct. 1354. Writing for the court, Justice Scalia traced the right to confrontation back to the Roman Empire. *Id.* at 43, 124 S.Ct. 1354. The Court looked to a period-dated dictionary to de-

termine what the framers believed was "testimonial" when drafting the Sixth Amendment: " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* at 51, 124 S.Ct. 1354 (citing 1 N. Webster, *An American Dictionary of the English Language* (1828)). *Crawford* left open the exact parameters of the word "testimonial" for another day. *Id.* at 68, 124 S.Ct. 1354.

[¶ 9] The Supreme Court described three "formulations" of the "core class of 'testimonial' statements." *Id.* at 51, 124 S.Ct. 1354. First, the Court described a class consisting of "ex parte in-court testimony or its functional equivalent," which includes such things as "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* The second class of testimonial statements consists of out-of-court statements "contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Id.* at 52, 124 S.Ct. 1354. The final class described by the Supreme Court is comprised of testimonial statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.*

[¶ 10] As examples of testimonial statements, the Supreme Court pointed to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* Specifically, in *Crawford,* the Supreme Court recognized a witness's tape-recorded statement made during a police interrogation was a testimonial statement. *Id.* at 53, 124 S.Ct. 1354. The Court stated "interrogations by law enforcement officers fall squarely within [the] class [of testimonial hearsay]."

*Id.* Significant to this case, the *Crawford* Court stated: "Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." *Id.* at 56 n. 7, 124 S.Ct. 1354. In the absence of police interrogation or in court testimony, defining exactly what is "testimonial" has caused other courts to struggle with a precise definition, producing, as one court described it, a "miasma of uncertainty." *United States v. Brito,* 427 F.3d 53, 55 (1st Cir.2005).

[¶ 11] In *Davis v. Washington,* ─── U.S. ───, 126 S.Ct. 2266, ─── L.Ed.2d ─── (2006), the Supreme Court further explored the dichotomy between testimonial and nontestimonial statements. The Supreme Court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2273–74. In *Davis,* the Supreme Court held a witness's statement identifying a victim's assailant to a 911 operator during an incident of domestic violence was a nontestimonial statement. *Id.* at 2277. In the companion case of *Hammon,* the Supreme Court held a victim's affidavit given during an investigation by police officers into past criminal activity at a time removed from any threat of immediate danger was a testimonial statement. *Id.* at 2279. The Supreme Court focused on the timing and nature of the two reports. *Id.* at 2276. The *Davis* court determined

that whether an individual was acting as a witness and in essence "testifying" should be determined by looking to the surrounding circumstances of when a report is made, the nature of the report given, the level of formality when making a report, and the purpose of the report. *Id.* at 2276–77. The *Davis* court also recognized that the Confrontation Clause requires evaluation of the "declarant's statements, not the interrogator's questions." *Id.* at 2274 n. 1. Finally, the Court clarified that statements made in the absence of interrogation could be testimonial because the "Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation." *Id.*

[¶ 12] Even before *Davis,* the cases that interpreted *Crawford* noted the context and circumstances in which a statement is made is important in determining whether a statement is testimonial. For example, an out-of-court statement by a victim to a friend, family member, coworker, or non-government employee, without police involvement, have been held nontestimonial. *See, e.g., People v. Griffin,* 33 Cal.4th 536, 15 Cal.Rptr.3d 743, 93 P.3d 344, 372 n. 19 (2004) (victim's statement to a friend at school that defendant had been fondling her for some time and she intended to confront him was not testimonial hearsay within the meaning of *Crawford* ); *Herrera–Vega v. State,* 888 So.2d 66, 69 (Fla.Dist.Ct.App.2004) (child's statements to mother and father reporting a touching were not testimonial); *Demons v. State,* 277 Ga. 724, 595 S.E.2d 76, 79–80 (2004) (victim's statement to coworker that the defendant had threatened to kill the victim was admissible as a nontestimonial statement); *People v. Geno,* 261 Mich.App. 624, 683 N.W.2d 687, 692 (2004) (statement made by child was not testimonial because it was made to a non-government employee of Children's Assessment Center and was not a statement in the nature of "ex parte in-court testimony or its functional equivalent").

[¶ 13] Likewise, if an interview is done strictly for medical purposes, and not in anticipation of criminal proceedings, the statement would be considered nontestimonial. *See, e.g., State v. Scacchetti,* 690 N.W.2d 393, 396 (Minn.App.2005) (three-year-old victim's statements to a nurse practitioner made in a hospital while the nurse examined the victim for purposes of medical diagnosis were not testimonial); *Foley v. State,* 914 So.2d 677, 685 (Miss. 2005) (statements made as a part of neutral medical evaluations do not meet *Crawford's* testimonial criterion); *State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284, 291 (2004) (four-year-old victim's statements solicited by a doctor for medical treatment was not testimonial statement).

[¶ 14] But if a statement is made as part of an investigation by government officials the statement is generally considered testimonial. As the *Crawford* court recognized: "Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." *Crawford,* 541 U.S. at 56 n. 7, 124 S.Ct. 1354. The fact that the questioner is a government officer is highly probative of the questioner's purpose. The involvement of government officials would often "lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52, 124 S.Ct. 1354. Other courts have followed this approach and the *Davis* opinion says nothing to suggest this approach was in error.

[¶ 15] In cases since *Crawford,* other states with the functional equivalent of the Children's Advocacy Center involved in this case have held that similar statements

made by a child with police involvement inevitably are testimonial. *See, e.g., People v. Sisavath,* 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753, 757 (2004) (holding as testimonial under *Crawford* interview of child victim of sexual abuse taken and videotaped at county facility designed and staffed for interviewing children suspected of being victims of sexual abuse); *Contreras v. State,* 910 So.2d 901, 903–06 (Fla. Dist.Ct.App.2005) (videotaped statement of defendant's thirteen-year-old daughter by a coordinator of Florida's child protection team, while working with a county sheriff connected electronically in another room, was testimonial and could not be used at trial); *In re Rolandis G.,* 352 Ill.App.3d 776, 288 Ill.Dec. 58, 817 N.E.2d 183, 189–90 (2004) (seven-year-old made the same statement to his mother, a police detective, and a child abuse investigator, but only the statement to his mother was nontestimonial); *State v. Snowden,* 867 A.2d 314, 325–26, 867 A.2d 314 (2005) (testimony of sexual abuse investigator employed by Child Protective Services as to statements made by child sexual abuse victim held testimonial under *Crawford*); *Rangel v. State,* No. 2–04–514–CR, 2006 WL 2076552 (Tex. App. July 25, 2006) (videotape recording of interview between a six-year-old child and a forensic investigator with the Child Protective Services was held to be testimonial); *see also* Heather L. McKimmie, Note, *Repercussions of Crawford v. Washington: A Child's Statement to a Washington State Child Protective Services Worker May Be Inadmissible,* 80 Wash. L.Rev. 219, 242–43 (2005) (arguing that *Crawford* requires a prior opportunity to cross-examine before a child's statement to a child protective services worker can be properly admitted). *But see State v. Bobadilla,* 709 N.W.2d 243, 254 (Minn.2006) (holding child's statement to child-protection worker with government involvement was non-testimonial because interview was not done in order to produce a statement for trial); Erin Thompson, Comment, *Child Sex Abuse Victims: How Will Their Stories Be Heard After Crawford v. Washington?,* 27 Campbell L.Rev. 279, 300 (2005) (arguing that the United States Supreme Court should declare exceptions from *Crawford* for child sex abuse victims for face-to-face confrontations).

[¶ 16] We are in agreement with the majority of jurisdictions that have dealt with a similar factual scenario. In this case, the videotape of the child's statement to the forensic interviewer was testimonial as defined under *Crawford.* The statement was made with police involvement. Statements made to non-government questioners acting in concert with or as an agent of the government are likely testimonial statements under *Crawford.* The *Davis* court declined to consider the precise nature of when statements made to someone other than law enforcement personnel are testimonial. *Davis,* 126 S.Ct. at 2274 n. 2. Nonetheless, like the 911 operator in *Davis,* we conclude the forensic interviewer in this case was either acting in concert with or as an agent of the government and thus we too need not decide the precise scope of this question. We thus look to the purpose of the questioner.

[¶ 17] The forensic interviewer's purpose was undoubtedly to prepare for trial. Forensic by definition means "suitable to courts." *Merriam–Webster's Collegiate Dictionary* 490 (11th ed.2005). The police involvement also adds to the testimonial nature of the interview. Officer Murphy viewed the interview in another room and received the videotape immediately after the interview was completed. Police involvement under these facts indicates the purpose of the interview was in preparation for trial.

[¶ 18] Because there was no "ongoing emergency" and the primary purpose of the videotaped interview in this case was "to establish or prove past events potentially relevant to a later criminal prosecution," we hold the videotape recording constituted a testimonial statement. *Davis*, 126 S.Ct. at 2274.

### B

[¶ 19] Determining the statement was testimonial does not end our constitutional inquiry. A testimonial statement can still be admitted into evidence provided the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness: "Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354.

[¶ 20] The district court analyzed this case under the guidelines we laid down pre-*Crawford* in *State v. Hirschkorn*, 2002 ND 36, 640 N.W.2d 439 and *State v. Messner*, 1998 ND 151, 583 N.W.2d 109. The court's opinion on the admission of the videotape was filed on February 1, 2005— nearly a year after *Crawford* was issued. Neither party argued *Crawford* applied at the district court. The defense counsel objected to the admission of the videotape at trial based on the defendant's "right to confront a witness under the constitution." The district court, while not mentioning *Crawford*, found the child to be an unavailable witness under N.D.R.Ev. 804(a)(3) due to her lack of memory. The court's order went on to make detailed findings of fact that addressed: spontaneity and consistent repetition, the mental state of the child, use of terminology of a child of similar age, and lack of motive to fabricate. The court concluded the State met its burden for establishing a sufficient indicia of "reliability and trustworthiness."

[¶ 21] The district court erred as a matter of law in determining the child was unavailable and that "reliability and trustworthiness" can supersede the constitutional demand of confrontation. The "reliability and trustworthiness" factors found in *Hirschkorn*, 2002 ND 36, ¶¶ 12–13, 640 N.W.2d 439 and *Messner*, 1998 ND 151, ¶ 15, 583 N.W.2d 109, were created in reliance upon *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and its progeny. The reliability and trustworthiness factors are still to be used for nontestimonial statements. *United States v. Brun*, 416 F.3d 703, 707 (8th Cir.2005). But when testimonial statements are at issue, the constitutional right to confrontation cannot be superseded by reliability and trustworthiness. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. To the extent *Hirschkorn*, 2002 ND 36, 640 N.W.2d 439, and *Messner*, 1998 ND 151, 583 N.W.2d 109, contradict the holding in *Crawford*, they are necessarily overruled.

### C

[¶ 22] The State argues the child's testimony at an evidentiary hearing provided Blue a sufficient opportunity to cross-examine the child, thus eliminating any *Crawford* violation. The State asks that we give the word "opportunity" an expansive definition so that a witness's mere presence at a preliminary hearing is sufficient for confrontation purposes.

[¶ 23] If a defendant has an opportunity to cross-examine the witness at trial, the admission of testimonial statements would not violate the Confrontation Clause. The core constitutional problem is eliminated when there is confrontation. *Crawford*, 541 U.S. at 68–69, 124 S.Ct. 1354. *Crawford* makes clear that, "when the declarant appears for cross-examina-

tion at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.... It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court." *Id.* at 59–60 n. 9, 124 S.Ct. 1354 (citations omitted; internal quotation marks omitted.)

[¶ 24] Where a defendant has a same or similar motive to cross-examine a witness, the opportunity to cross-examine a witness before trial can satisfy the Confrontation Clause. *See, e.g., Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) (adequate cross-examination because statement was given in prior trial on same charges); *California v. Green,* 399 U.S. 149, 165–68, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (witness's preliminary hearing testimony was admissible because defendant had an adequate opportunity to cross-examine the witness); *Mattox v. United States,* 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (admitting testimony given at the defendant's first trial by a witness who had died by the time of the second trial). The opportunity to cross-examine a witness refers to the time the prior statement, now sought to be introduced at trial, was made. But the Supreme Court has also emphasized the Confrontation Clause reflects a preference for face-to-face confrontation at trial, because "it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." *Green,* 399 U.S. at 157, 90 S.Ct. 1930. This does not mean a right to cross-examination in whatever way the defense might wish. *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

[¶ 25] In this case, the trial court conducted an evidentiary hearing to determine the witness's reliability. The child, sitting on her mother's lap, was asked a series of questions by the State and by the district court judge. The child did not verbally answer whether she knew Blue. The child simply shook her head. No questions were asked by the defendant.

[¶ 26] The State argues, without reference to any controlling authority, that the opportunity to cross-examine a witness should include a witness's mere presence at a preliminary hearing. We reject such a strained reading of Supreme Court precedent. A witness's mere appearance at a preliminary hearing is not an adequate opportunity for cross-examination for purposes under the Confrontation Clause. This does not mean the videotape statement of the child is completely inadmissible. The videotape statement can still be admissible under N.D.R.Ev. 803(24)(b)(i) provided the child testifies at trial.

[¶ 27] But in this case, the district court's pre-trial order eliminated the need for the State to call the witness and precluded Blue from even attempting to call his accuser at trial. Because of this, Blue has not had an adequate opportunity to cross-examine his accuser.

D

[¶ 28] The State argues even if Blue's constitutional rights were violated, any violation was harmless error beyond a reasonable doubt.

[¶ 29] In a criminal case, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." N.D.R.Crim.P. 52(a). Certain federal constitutional errors do not automatically require reversal if it is shown they were harmless beyond a reasonable doubt. *State v. Frankfurth,* 2005 ND 167, ¶ 35, 704 N.W.2d 564 (Kapsner, J., concurring) (collecting cases). Before determining an

error is harmless beyond a reasonable doubt, the court must review the entire record and determine, in light of all of the evidence, the probable effect of the alleged error upon the defendant's rights. *Id.* at ¶ 7. A federal constitutional error may be declared harmless if the court is convinced that the error did not contribute to the verdict. *Id.*

[¶ 30] The admission of the videotaped testimony in this case cannot be considered harmless error beyond a reasonable doubt. The videotape was the central piece of evidence before the jury. Although there was other corroborative evidence, including testimony from the child's mother and physician, the child's statements to the forensic interviewer of the Children's Advocacy Center provided the most detailed account of the incident and afforded the jurors the only opportunity to hear what had happened from the child herself. If the videotape was not allowed into evidence, the jury would not have seen the child and the conviction would have been based on hearsay statements from other people. We cannot conclude the *Crawford* error was harmless beyond a reasonable doubt.

## E

[¶ 31] Blue also argues N.D.R.Ev. 803(24)(b)(ii) (child's statement about sexual abuse when unavailable as a witness) and N.D.R.Ev. 807 (residual exception) are unconstitutional in light of the holding in *Crawford.* Both parties agree these rules are unconstitutional as they relate to testimonial statements. The State argues the rules should remain as useful tools in dealing with nontestimonial statements, because, to the extent a nontestimonial statement is at issue, a *Crawford* problem does not exist. Having already determined Blue's constitutional rights were violated,

we deem it unnecessary to address the constitutionality of these Rules.

## III

[¶ 32] We hold the introduction of the videotape testimony violated Blue's constitutional right to confrontation in violation of *Crawford* and the violation was not harmless beyond a reasonable doubt. The statement of the four-year-old to Gregerson, the forensic interviewer with Children's Advocacy Center, was testimonial, the child was not unavailable for cross-examination purposes, and Blue did not have an opportunity to cross-examine the child at trial. If the videotape is to be introduced as evidence, Blue must have an opportunity to cross-examine the child at trial. We reverse and remand for further proceedings not inconsistent with this opinion.

[¶ 33] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.

I concur in the result. MARY MUEHLEN MARING.