2005 ND 16

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Orvin McKinley IGOU III, Defendant and Appellant.**

**No. 20040093.**

Supreme Court of North Dakota.

Jan. 19, 2005.

Cynthia Mae Feland, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Kent M. Morrow, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]  Orvin McKinley Igou, III, appealed from a judgment of conviction entered upon a jury verdict finding him guilty of gross sexual imposition, solicitation of a minor, and failure to register as a sex offender.  We hold there is substantial evidence to support Igou's convictions on all counts.  We further hold, however, that Igou's conviction for solicitation of a minor was wrongly designated a class C felony, instead of a class A misdemeanor.  We, therefore, affirm all convictions, but reverse and remand for resentencing on all counts, in consideration that Igou's conviction on count II is a class A misdemeanor.

## I. Facts

[¶ 2] Igou moved to Bismarck in 2002 and registered with the Bismarck Police Department as a sexual offender for a prior conviction in Nevada of possession of child pornography. While in Bismarck, Igou met M.T. ("Mary," a pseudonym) with whom he began a relationship, through which he met Mary's daughter, N.T. ("Nancy," a pseudonym), age 15, and her friend, K.W. ("Kate," a pseudonym), age 14.

[¶ 3] In June 2003, Igou was charged with sexually assaulting Kate and soliciting sex from Nancy. He was also charged with failing to register as a sex offender for not notifying the Bismarck Police Department that he had changed his Bismarck address. A jury found Igou guilty on all counts.

## II. Sufficiency of the Evidence

[¶ 4] On appeal Igou asserts there is insufficient evidence to support his convictions. At the close of the State's case, Igou moved for a judgment of acquittal under N.D.R.Crim.P. 29, thereby preserving the issue of sufficiency of the evidence. *See State v. Mathre*, 2004 ND 149, ¶ 19, 683 N.W.2d 918. The motion was denied.

[¶ 5] Our standard of review is well established for cases in which a defendant challenges the sufficiency of the evidence to support a criminal conviction. A defendant bears the burden of showing the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Wilson*, 2004 ND 51, ¶ 6, 676 N.W.2d 98. On appeal, this Court merely reviews the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *Id.* A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor. *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d 816.

### A. Gross Sexual Imposition

[¶ 6] The jury found Igou guilty of gross sexual imposition, a class A felony, in violation of N.D.C.C. § 12.1–20–03(1)(d), which provides:

1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

. . . .

d. The victim is less than fifteen years old.

[¶ 7] In viewing the evidence most favorable to the verdict, we conclude it is sufficient to support Igou's conviction of gross sexual imposition for having sex with Kate, who at the time was 14 years old. The evidence shows that during Memorial Day weekend in 2003, Igou, Mary, Nancy, and Kate all went camping at a nearby lake. The four of them slept in one large tent. Kate testified that late in the evening, when they were all lying in the tent, Igou began touching her vaginal area under her clothes. Nancy testified that Kate "grabbed my hand and had me feel her pants, and his [Igou's] hand was in her pants." At 2:30 a.m., Igou drove Kate back to Bismarck so she could deliver newspapers and Nancy went with them. Kate and Nancy both testified that when they arrived in Bismarck Igou stopped at his apartment to take out his contact lenses. Nancy testified "we were going to go to his place, and they were going to have sex, and then we were going to drop her off and then come back and finish, me and him were going to." Kate testified that

she and Igou had sex in his bedroom while Nancy watched television in the living-room. The three of them then left Igou's apartment and Igou dropped off Kate at her house so she could deliver her paper route. Nancy testified that she slid into the front seat when Kate got out of the car and "then we were driving, and he asked me if I wanted to have sex, and then I said no I didn't, that I wanted my boyfriend to be my first."

[¶ 8] Nancy testified that at first she was afraid to tell anyone, because Igou said he would kill them if they told. How-ever, about a week later, Nancy told her boyfriend's mother about what had hap-pened. The police were then notified.

[¶ 9] Mary testified that about a week after the camping trip, Nancy told her what happened:

[S]he told me the reason why she was sick to her stomach because, she goes something happened between [Igou] and [Kate]. And I'm going what's going on here, and she goes, she goes, well she told me they did it. And that's how she said it. And I'm going really. I said really. I said, and then I really got upset. And [Nancy] told me that he had asked her to do it. And she had said no. And she demanded to come back to the campground where I was. And then she told me that he said, [Igou] had said if they were to tell anybody, that he was going to kill them.

[¶ 10] In viewing the evidence in the light most favorable to the verdict, we conclude the jury could reasonably have found beyond a reasonable doubt that Igou committed gross sexual imposition in viola-tion of N.D.C.C. § 12.1–20–03(1)(d) by having sexual intercourse with Kate, who was then 14 years old.

### III. Solicitation of a Minor

■ [¶ 11] Igou was also charged and convicted of solicitation of a minor, in vio-lation of N.D.C.C. § 12.1–20–05, which provides:

1. An adult who engages in, solicits with the intent to engage in, or causes another to engage in a sexual act with a minor, is guilty of a class A misdemeanor if the victim is a minor fifteen years of age or older.

2. An adult who solicits with the intent to engage in a sexual act with a minor under age fifteen or engages in or causes another to engage in a sexual act when the adult is at least twenty-two years of age and the vic-tim is a minor fifteen years of age or older, is guilty of a class C felony.

[¶ 12] On this count, the trial court in-structed the jury as follows:

The Information charges the offenses to have been committed as follows, to-wit:

. . . .

COUNT 2: The defendant, Orvin McKinley Igou III, solicited with the intent to engage in a sexual act with a minor fifteen years of age or older and the defendant is at least twenty-two years of age; specifically the defendant solicited [Nancy], D.O.B. 01/20/88. . . .

*SOLICITATION OF A MINOR:* An adult who willfully solicits a minor over the age of fifteen (15) years of age to engage in a sexual act is guilty of the crime of Solicitation of a Minor. . . .

COUNT II: Solicitation of a Minor

1. That on or about May 31, 2003;

2. In Burleigh County, North Dakota,

3. The defendant, Orvin Igou III,

4. Willfully

5. Solicited [Nancy] to engage in a sex-ual act and

6. [Nancy] was a minor over the age of fifteen (15) years old.

### A.

[¶ 13] Igou asserts there is not sufficient evidence to prove that Igou was guilty of "soliciting" in violation of the statute. While not defined by our criminal statute, *Black's Law Dictionary* 723 (5th ed.1983) defines "solicit" to mean:

> To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication.

[¶ 14] Nancy testified that, while she and Igou were riding in his car, after Igou had dropped Kate off at her home, Igou twice asked Nancy to have sex with him. She declined and told him she wanted to go back to be with her mother at the campsite. Viewed in the light most favorable to the verdict, there is sufficient evidence for the jury to have reasonably found that Igou earnestly requested Nancy to have sex with the intent of engaging in sexual intercourse with her and that his conduct violated N.D.C.C. § 12.1–20–05.

### B.

[¶ 15] Under N.D.R.Crim.P. 52(b), "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The power to notice obvious error on the court's own motion is one which should be exercised cautiously and only in exceptional circumstances. *State v. Smith*, 1999 ND 109, ¶ 14, 595 N.W.2d 565. An appellate court may notice error that was not brought to the attention of the trial court if there was: (1) error, (2) that is plain, and (3) affects substantial rights. *State v. Flanagan*, 2004 ND 112, ¶ 6, 680 N.W.2d 241. We have discretion to correct obvious error and should correct it if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765.

[¶ 16] Although not brought to the trial court's attention, we take notice on our own motion that the charge on count II, and Igou's conviction thereof, has been designated a class C felony, but under the statute it is clearly a class A misdemeanor. In entering the judgment and sentence, the trial court improperly designated Igou's conviction on count II as a class C felony, but Igou's wrongful conduct as charged and proven could only constitute a class A misdemeanor under the statute. The jury was correctly instructed and the verdict could not have been prejudicially impacted by this error. However, the trial court may have imposed a different sentencing structure for the three convictions if count II had been properly designated a class A misdemeanor instead of a class C felony. We, therefore, find it necessary to reverse and remand this case for resentencing on all counts, in consideration that Igou's conviction on count II is a class A misdemeanor.

### IV. Failure to Register as Sex Offender

[¶ 17] Igou was also charged and convicted of failing to register as a sex offender, a class A misdemeanor, in violation of N.D.C.C. § 12.1–32–15, which provides in relevant part:

> 7. ... If an individual required to register pursuant to this section has a change in name, school, or address, that individual shall inform in writing, within ten days, the law enforcement agency with

whom that individual last registered of the individual's new name, school, residence address, or employment address.

The trial court instructed the jury on the following essential elements of this offense:

COUNT III: Failure to Register as a Sex Offender

1. Some time between April 1, 2003, and June 11, 2003, in Burleigh County, North Dakota, the defendant, Orvin Igou III, relocated to a new address in Bismarck, North Dakota;

2. That Orvin Igou III was a person required to register as a sexual offender;

3. That within 10 days of relocation by the defendant;

4. He willfully failed to register with local Bismarck authorities.

Igou asserts the only element the State failed to prove beyond a reasonable doubt was the final element that Igou willfully failed to register with local Bismarck authorities. Igou testified that he mailed a letter to the Bismarck Police Department about his change of address in Bismarck. However, Jean Leuwer, the supervisor of records for the Bismarck Police Department testified that although the department would accept a handwritten notification of a sex offender's change of address, there are no records on file that the department ever received such a letter from Igou or that Igou otherwise attempted to notify the department of his change of address.

[¶ 18] It is the exclusive function of the jury to weigh the evidence and judge the credibility of witnesses, and we will not substitute our judgment for that of the jury where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction. *State v. Schill*, 406 N.W.2d 660, 661 (N.D.1987). Viewing the evidence in a light most favorable to the verdict, we conclude the jury could reasonably have found beyond a reasonable doubt that Igou willfully failed to register as a sex offender in violation of N.D.C.C. § 12.1–32–15.

IV

[¶ 19] Viewing the evidence in the light most favorable to the verdict, we conclude there is substantial evidence upon which a jury could reasonably find Igou guilty on all charges brought against him. Because Igou's conviction on count II was wrongly designated a class C felony, rather than a class A misdemeanor, we affirm the conviction on all counts but reverse and remand for resentencing on all counts, in consideration that the conviction on count II is a class A misdemeanor.

[¶ 20] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.