2008 ND 4

**STATE of North Dakota, Plaintiff and Appellee**

v.

**James Eugene WEGLEY, Defendant and Appellant.**

**No. 20070027.**

Supreme Court of North Dakota.

Jan. 17, 2008.

Nicole Ellan Foster, State's Attorney, Williston, N.D., for plaintiff and appellee.

Bonnie Louise Storbakken, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶1] James Eugene Wegley appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition. We hold the district court did not err in admitting testimony about the victim's out-of-court statement, the court did not abuse its discretion in denying Wegley's request for a ruling that evidence of his prior rape conviction would not be admissible regardless of his trial testimony, and there was sufficient evidence to support his conviction. We affirm.

I

[¶2] The State charged Wegley with gross sexual imposition, alleging that in September 2005, he engaged in sexual contact with a person less than fifteen years old. Wegley is the grandfather of the alleged victim, who was seven years old in September 2005, and he is the father of the child's mother.

[¶3] Eight days before trial, the State made a pretrial motion under N.D.R.Ev. 803(24) for the admission of out-of-court statements made by the child to her mother at the time of the alleged act and to Monique Goff during a subsequent forensic interview that was videotaped. The State's motion said "[s]ome of the out-of-court statements ... will be offered as prior consistent statements, so are not technically hearsay." The district court heard arguments on the State's motion on the first day of trial, in conjunction with jury selection. The State's offer of proof about the child's out-of-court statements consisted of comments to the court by the prosecuting attorney:

The statement to the mother actually occurred at the time the event was occurring. The facts would be that—or the facts the testimony would show is that when [the mother] walked into the room where this was occurring, a kind of scuffle ensued between [the mother] and the defendant.

And at that point [the mother] turned to her daughter and said, "He was touching you." And the daughter shook her head "Yes." [The mother] then asked the daughter, "Has this happened before?" And the daughter shook her head, "Yes."

. . . .

The social worker, Your Honor, it was in the course of a forensic interview. During the interview the social worker asked the little girl.... Asked [the child] if, you know, if she knew why she was there and [the child] said no.

The social worker says to [the child], "Well, you are here because your mom was worried that your grandpa Gene had had some secret touches or private touches with you." [The child] says, "I don't know."

Monique pursues—Monique is the social worker, pursues it a little bit. After a couple of times of [the child] saying, "I don't know, I don't know", Monique asked her specifically, "Did your grandpa Gene touch you?" And [the child] either said, "Yes" or shook her head "Yes." I'd have to review the video, Your Honor.

Monique then asked [the child] to tell her where. [The child] kind of said—didn't respond or maybe said I don't know. Again, I'd have to review the video.

Monique then asked if [the child] would be willing to show her on an atomically [sic] correct picture of a little girl where grandpa Gene touched her and [the child] pointed to on the picture. And I do have a copy of the picture. Did point to it twice in the vaginal area.

[¶ 4] The district court did not immediately rule on the State's motion. After jury selection was completed on the first day of trial, the State called the child as its first witness, and she testified:

Q. ... Okay. Do you have grandpas and grandmas ... ?

A. Yes.

Q. Is one of your grandpas in the room today?

A. Yes.

Q. I'm going to get out a picture okay? [D]oes your mom and dad's bedroom, does that have a TV in the room?

A. Yes.

Q. Do you sometimes like to watch TV in your mom and dad's room?

A. Yes.

Q. [I]s that a picture of your mom and dad's bedroom?

A. Yes.

Q. Time for some other questions, okay? Was there a time when you were watching TV in your mom's room?

A. Yes.

Q. When Grandpa Gene came in there?

A. Yes.

Q. Were you wearing your pajamas?

A. Yes.

Q. Were they pants or a nightgown?

A. Pants.

Q. Did you have your underwear on?

A. Yes.

Q. When you were laying on mom's bed, did you lay over the covers or under the covers?

A. Under the covers.

Q. Sometimes I forget things, so I have to write them down. That time when Grandpa Gene came in, did he touch you?

A. Yes.

Q. Where?

A. In my private parts.

Q. How did you feel when grandpa did that? Were you scared?

A. Yes.

Q. Did your mom come into the room when Grandpa Gene was doing that?

A. Yes.

Q. How did you feel when mom came in the room?

A. Scared.

Q. Did you tell your mom what grandpa did to you? Is that a hard question?

A. Yes.

Q. Did you tell your mom that Grandpa Gene had touched you?

A. Yes.

Q. You're doing good. [D]id your mom see what Grandpa Gene was doing?

A. Yes.

Q. Did she get upset?

A. Yes.

Q. [D]o you remember what your mom did when Grandpa Gene was—when she got upset?

A. No.

Q. No. Okay. That's okay.... I don't have anymore questions to ask you.

On cross-examination, the child testified:

Q. ... Now, do you remember your mom talking to you about your grandpa?

A. No.

Q. Do you remember your mom telling you?

A. No.

Q. That grandpa was touching you?

A. No.

Q. Have you ever talked to your mom about some of those questions that that lady just asked you?

A. No.

Q. You don't remember or you haven't talked with her about it? Do you remember talking to anyone else?

A. No.

Q. About what happened?

A. No.

Q. No? Do you remember your mom taking you to a place to visit with somebody?

A. No.

Q. Remember anyone by the name of Monique.

A. No.

Q. Okay. Do you remember talking to anyone else?

A. No.

Q. Other than your mom?

A. No.

[¶ 5] After the child testified, the district court adjourned for the day. On the morning of the second day of trial, the court analyzed the State's offer of proof about the child's out-of-court statement to the mother under N.D.R.Ev. 803(24) and granted the State's pretrial motion to admit the mother's testimony about the child's out-of-court statement.

[¶ 6] Also on the morning of the second day of trial, the State moved to withdraw its pretrial motion under N.D.R.Ev. 803(24) regarding Goff's testimony. The district court granted the State's motion to withdraw and did not view the videotape, but nevertheless analyzed the State's offer of proof about the child's out-of-court statement to Goff under N.D.R.Ev. 803(24) and ruled the statement was admissible.

[¶ 7] Immediately thereafter, the State called the child's father to testify and then called Goff to testify. Goff testified without a contemporaneous objection by Wegley that during the forensic interview of the child, the child said that something happened with her grandfather, and when Goff asked the child what part of her body her grandfather had touched, the child pointed to a vagina on an anatomical drawing, which she labeled as her "pee pee." Goff testified the child was not able to verbalize anything more and did not want to talk about what happened.

[¶ 8] The State then called the child's mother to testify. The child's mother testified without a contemporaneous objection by Wegley that she came upon Wegley and the child in the mother's bedroom:

Q. What did you see when you were standing in the doorway?

A. Gene kissing her.

Q. What kind of kiss was it?

A. Like a long kiss on the lips. A really long, kind of leaned over, weird kiss.

Q. Did you notice anything else about your father?

A. Yes, his hand was under the blanket.

Q. Then what did you do?

A. Walked over there, pulled off the blanket.

Q. What did you see?

A. Him rubbing her privates.

Q. I don't mean to make this more difficult, but . . .

A. Her vagina, whatever you want to say.

Q. Did you see his hand directly on?

A. Yeah. And his fingers moving around.

Q. Did [the child] still have her underwear on?

A. Yes.

. . . .

Q. Do you need a second?

A. I'm okay.

Q. After that, what happened?

A. I think there was some—is what I can remember is I looked at [the child] and said something—"He was touching private, has he did that before?" And she nodded yes and then I think said you are a pervert.

And I started swinging, hitting him. And then he started saying, "I'm sorry, I'm sorry, I'll leave, I'll leave."

And then I remember following him out to the kitchen and screaming and stopping and hitting him some more.

. . . .

Q. [I]s there any doubt in your mind as to where you saw the defendant's hand?

A. No.

Q. Any doubt in your mind to having seen his fingers moving?

A. No.

Q. This obviously is a difficult topic for you and I am sorry. Do you think it took your father a while to realize you were standing there?

A. Yes.

Q. Why?

A. In his own little mode, I guess, mind. Too busy concentrating on what he was doing or something.

Q. He didn't notice you in the doorway at all?

A. No.

On redirect, the mother pointed to the vagina on an anatomical drawing of a female to show where she saw Wegley's fingers touching and rubbing the child.

[¶ 9] At trial, the district court also denied the State's pretrial motion to allow the State to introduce evidence under N.D.R.Ev. 404(b) that Wegley had a 1975 conviction for rape. After the State rested, Wegley asked the court for a "clarification" under N.D.R.Ev. 609 "that that conviction cannot be used regardless of what the testimony of [Wegley] may be." The court denied Wegley's request, and he did not testify at trial. A jury found Wegley guilty of gross sexual imposition.

II

[¶ 10] Wegley argues the district court erred in admitting testimony about the child's out-of-court statements to her mother and to Goff without sufficient guarantees of trustworthiness and reliability under the requirements of N.D.R.Ev. 803(24).

[¶ 11] Rule 803(24), N.D.R.Ev., outlines a hearsay exception for a child's out-of-court statement about sexual abuse:

An out-of-court statement by a child under the age of 12 years about sexual abuse of that child or witnessed by that child is admissible as evidence (when not

otherwise admissible under another hearsay exception) if:

(a) The trial court finds, after hearing upon notice in advance of the trial of the sexual abuse issue, that the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness; and

(b) The child either:

(i) Testifies at the proceedings; or

(ii) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

■ [¶ 12] We apply an abuse of discretion standard of review to a district court's evidentiary rulings under N.D.R.Ev. 803(24), and we will not reverse the court's ruling unless it is arbitrary, capricious, or unreasonable, or a misinterpretation or misapplication of the law. *State v. Hirschkorn*, 2002 ND 36, ¶ 7, 640 N.W.2d 439. In *Hirschkorn*, at ¶¶ 11, 13, 18 (citations omitted), we explained the purpose of N.D.R.Ev. 803(24) and its application:

Enactment of child-hearsay rules is intended to ensure that child abusers do not go free merely because the prosecutor is unable to obtain witnesses to the abuse other than the child, who is unable to testify about the abuse. While the child-hearsay rule permits the admission of otherwise inadmissible hearsay evidence in order to facilitate prosecution, the rule's requirements are also intended to safeguard the accused's right to confront the witnesses testifying against him. The child-hearsay rule is intended to balance the interests of the accused and the interests of the truth-seeking process. Indicia of reliability and guarantees of trustworthiness are constitutionally required before admission of hearsay statements to preserve the Sixth Amendment's basic interest in requiring "confrontation," even though an accused cannot directly confront the hearsay declarant. Because of the importance of the accused's confrontation rights, the safeguards built into the child-hearsay rule must be strictly observed.

. . . .

Under N.D.R.Ev. 803(24)(a), the child's hearsay statements are not admissible unless the trial court finds that "the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness." Factors to consider include spontaneity and consistent repetition, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and a lack of a motive to fabricate. A trial court must make explicit findings as to what evidence it relied upon regarding the factors and explain its reasons for either admitting or excluding the testimony so a defendant can be assured the required appraisal has been made, and so this Court can properly perform its appellate review function. Although written findings are preferred, duly recorded oral findings satisfy the requirements of the child-hearsay rule.

. . . .

A trial court must make an in-depth evaluation of the proposed testimony. A trial court should not . . . merely quote the terms of the rule and order the testimony admitted, but should make specific findings of the facts relevant to reliability and trustworthiness and explain how these facts support the conclusion of admissibility. . . . [N]ondetailed findings might suffice when there is an adequate factual basis in the offer of proof to support the trial court's determination. . . . Moreover, in reviewing a trial court's evidentiary ruling under N.D.R.Ev. 803(24), we are limited to reviewing the proponent's offer of proof

made at the pretrial hearing and may not consider the entire evidence admitted during the trial to support the earlier ruling.

[¶ 13] When the mother and Goff testified at trial about the child's nod and gesture, Wegley did not make a contemporaneous objection. Even if a defendant objects to hearsay testimony at a pretrial hearing on a motion under N.D.R.Ev. 803(24), the defendant's failure to object at trial limits this Court's inquiry to determining whether the admission of that testimony into evidence constitutes obvious error affecting substantial rights under N.D.R.Crim.P. 52(b). *State v. Krull,* 2005 ND 63, ¶ 6, 693 N.W.2d 631; *State v. Ramsey,* 2005 ND 42, ¶ 12, 692 N.W.2d 498; *Hirschkorn,* 2002 ND 36, ¶ 6, 640 N.W.2d 439; *State v. Wiest,* 2001 ND 150, ¶ 6, 632 N.W.2d 812. Here, there was no hearing and finding on the State's pretrial motion "in advance of the trial of the sexual abuse issue" as contemplated by N.D.R.Ev. 803(24)(a). Rather, the hearing and decision on the pretrial motion occurred during the trial, and we do not condone that delay in the resolution of this issue. Although the district court ruled on the State's motion after argument by counsel on the morning of the second day of trial, the State presented testimony from other witnesses before Goff and the mother testified and Wegley did not contemporaneously object to their testimony. Under these circumstances, Wegley's failure to object during the testimony by Goff and by the mother limits this Court's inquiry to deciding whether the admission of that testimony constitutes obvious error.

[¶ 14] To establish obvious error, a defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights. *Krull,* 2005 ND 63, ¶ 6, 693 N.W.2d 631; *Ramsey,* 2005 ND 42, ¶ 12, 692 N.W.2d 498; *Hirschkorn,* 2002 ND 36, ¶ 6, 640 N.W.2d 439; *Wiest,* 2001 ND 150, ¶ 6, 632 N.W.2d 812. An alleged error does not constitute obvious error unless it is a clear deviation from an applicable legal rule under current law. *Krull,* at ¶ 6; *Ramsey,* at ¶ 12; *Hirschkorn,* at ¶ 6. To affect substantial rights, a plain error must have been prejudicial, or have affected the outcome of the proceeding. *Hirschkorn,* at ¶ 20. Analyzing obvious error requires examination of the entire record and the probable effect of the alleged error in light of all the evidence. *Id.* Even if a defendant establishes obvious error affecting substantial rights, the decision to correct the error lies within our discretion, and we will exercise that discretion only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at ¶ 22.

A

[¶ 15] We initially consider Wegley's claim that the district court erred in admitting the mother's testimony about the child's out-of-court nod in response to the mother's statement "He was touching private, has he did that before?"

[¶ 16] Under N.D.R.Ev. 801(a)(2), a "statement" is "nonverbal conduct of a person, if it is intended by the person as an assertion." The child's nonverbal conduct, a nod, in response to the mother's statement was intended as an assertion and is a "statement" under N.D.R.Ev. 801(a). *See* N.D.R.Ev. 801, Explanatory Note. *See also* 5 Weinstein's Federal Evidence § 801.10[2][b] (under identical federal rule, "[c]onduct that is usually viewed as an assertion includes gestures such as nodding or pointing in response to a question").

[¶ 17] Although the child's nod is a statement, a statement is not hearsay under N.D.R.Ev. 801(d)(1)(ii) if the declar-

ant testifies at trial and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *State v. Leinen,* 1999 ND 138, ¶¶ 8–15, 598 N.W.2d 102. In *Leinen,* at ¶ 9 (citations omitted), this Court explained the three requirements for nonhearsay under N.D.R.Ev. 801(d)(1)(ii):

> First, the declarant must have testified and been subject to cross-examination about the statement. Second, the statement must be offered to rebut a charge of recent fabrication or improper influence or motive. And finally, the statement must be a prior consistent statement made before the charge of recent fabrication or improper influence or motive arose.

[¶ 18] Here, the district court analyzed the mother's testimony about the child's out-of-court statement under N.D.R.Ev. 803(24) and granted the State's motion to admit the mother's testimony under that hearsay exception. We conclude, however, the mother's testimony about the child's prior statement was admissible because it is not hearsay under the requirements of N.D.R.Ev. 801(d)(1)(ii). During Wegley's opening statement to the jury, his counsel said that "[w]hat we are disputing is the state's rendition of the touching and more specifically that there was no sexual contact whatsoever." After the child had testified about her statement to her mother, the mother testified that when she discovered Wegley in her bedroom with the child, she looked at the child and "said something—'He was touching private, has he did that before?' And [the child] nodded yes." The mother's testimony was consistent with the child's prior testimony that Wegley had touched her in her private parts and that she told her mom that

Wegley had touched her. The mother's testimony rebutted a charge of recent fabrication or improper influence or motive and was not hearsay under N.D.R.Ev. 801(d)(1)(ii). *See Ramsey,* 2005 ND 42, ¶¶ 13–16, 692 N.W.2d 498; *Leinen,* 1999 ND 138, ¶¶ 8–15, 598 N.W.2d 102; *State v. Neufeld,* 1998 ND 103, ¶¶ 18–22, 578 N.W.2d 536; *State v. Burgard,* 458 N.W.2d 274, 278–79 (N.D.1990); *State v. Reinart,* 440 N.W.2d 503, 507 (N.D.1989); *State v. Janda,* 397 N.W.2d 59, 61–62 (N.D.1986); *State v. Jenkins,* 326 N.W.2d 67, 71 (N.D. 1982). We hold the mother's testimony about the child's nod was not hearsay and the admission of that testimony into evidence was not error under the first prong of the framework for analyzing obvious error.

### B

[¶ 19] Wegley argues the district court erred in admitting Goff's testimony. He asserts Goff was allowed to testify about the child's gesture to the vagina on an anatomical drawing used during the videotaped forensic interview. He argues the court allowed Goff's testimony about that gesture without reviewing the videotape to ensure trustworthiness and reliability under N.D.R.Ev. 803(24).

[¶ 20] Although the State claims Goff did not testify about any statements the child made to her, Goff testified to a gesture the child made to an anatomical drawing. As we have already explained, under N.D.R.Ev. 801(a)(2), nonverbal conduct is a statement if it is intended as an assertion. In the context of the State's offer of proof, the child's gesture was intended as an assertion, and we therefore reject the State's claim that Goff's testimony about the child's gesture was not a statement under N.D.R.Ev. 801(a).

[¶ 21] Although the district court granted the State's motion to withdraw its pretrial motion under N.D.R.Ev. 803(24) regarding Goff's testimony, the court nevertheless analyzed the State's offer of proof about the child's out-of-court statement to Goff under N.D.R.Ev. 803(24) and ruled the statement was admissible. We conclude, however, Goff's testimony about the child's prior out-of-court statement was admissible because it is not hearsay under N.D.R.Ev. 801(d)(1)(ii). The child's prior out-of-court statement to Goff is consistent with the child's trial testimony that Wegley touched her in her private parts. *See United States v. Owens*, 484 U.S. 554, 559–64, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (holding inability of witness to recall either the underlying events that are the subject of extra-judicial statement or the circumstance under which the statement was given does not have Sixth Amendment consequences and interpreting phrase "subject to cross-examination concerning statement" in F.R.Ev. 801(d)(1)(C) to mean a witness who is placed on the stand, under oath, and responds to questions). As with the mother's testimony, Goff's testimony also rebutted a charge of recent fabrication or improper influence or motive and was not hearsay under N.D.R.Ev. 801(d)(1)(ii). We hold Goff's testimony about the child's out-of-court statement was not hearsay and the admission of that testimony into evidence was not error under the first prong of the framework for analyzing obvious error.

### III

[¶ 22] Wegley argues the district court erred in denying his motion to exclude evidence of his 1975 conviction for rape. The jury did not hear evidence of Wegley's 1975 conviction for rape. However, Wegley claims the court's denial of his motion to prevent the State from using that conviction "at all" affected his decision not to

testify, which could have produced a different result.

[¶ 23] Decisions on the admissibility of evidence are discretionary, and this Court has rejected similar claims in areas of trial strategy and a defendant's decision to testify. *See Krull*, 2005 ND 63, ¶ 10, 693 N.W.2d 631; *State v. Carlson*, 1997 ND 7, ¶¶ 11–13, 559 N.W.2d 802. In *Krull*, at ¶ 10, we rejected the defendant's assertion that if the district court had not allowed into evidence non-admissible hearsay, the defendant's trial strategy might have been different or the defendant might have taken the stand in his own defense. We said the defendant's assertion was purely speculation and not supported by any offer of proof in the record. *Id.* Here, Wegley's claims also are speculative and not supported by an offer of proof. Moreover, Wegley has not demonstrated that he was entitled to a blanket ruling to prevent the State from using the prior conviction regardless of what his trial testimony may have been. We conclude the district court did not abuse its discretion in denying Wegley's request for a ruling that his prior conviction could not be used regardless of what his testimony may be.

### IV

[¶ 24] Wegley argues the evidence was insufficient to support his conviction. He claims any touching was accidental and his explanation makes more sense than the State's allegations.

[¶ 25] When a defendant challenges the sufficiency of the evidence to support a conviction, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Igou*, 2005 ND 16, ¶ 5, 691 N.W.2d 213. On appeal, we review the record to determine if there is competent evidence

allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *Id.* A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor. *Id.*

[¶ 26] Under N.D.C.C. § 12.1–20–03(2)(a) a person who engages in sexual contact with another is guilty of an offense if the victim is less than 15 years old. Sexual contact is defined as "any touching, whether or not through the clothing or other covering of the sexual or other intimate parts of the person . . . for the purpose of arousing or satisfying sexual or aggressive desires." N.D.C.C. § 12.1–20–02(4).

[¶ 27] The mother testified she observed Wegley "rubbing [the child's] privates . . . [h]er vagina" outside the child's clothing and saw Wegley's "fingers moving around." The mother further testified that Wegley "didn't notice [her] in the doorway at all," because he was "in his own little mode" and was "[t]oo busy concentrating on what he was doing." The child also testified Wegley touched her "private parts." We do not reweigh the evidence, and on this record, we conclude there is sufficient evidence, viewed in the light most favorable to the verdict, to support Wegley's conviction for gross sexual imposition. We therefore reject his claim that the evidence was insufficient to support his conviction.

### V

[¶ 28] We affirm the judgment.

[¶ 29] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.